# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH A. BAUBLIS,

Petitioner-Appellant,

v

CITY OF ANN ARBOR,

Respondent-Appellee.

UNPUBLISHED
November 29, 2016

No. 328320
Michigan Tax Tribunal
LC No. 14-007632-TT

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

Petitioner appeals by right the Michigan Tax Tribunal's denial of his motion for summary disposition, final opinion, and judgment. Petitioner sought to avoid the payment of real property taxes pursuant to respondent's poverty exemption under MCL 211.7u. Respondent denied petitioner's application because it found that petitioner did not meet its definition for being impoverished. Specifically, respondent's guidelines state that poverty "does not include having the inability to afford ones property taxes due to a self imposed situation." Respondent was concerned that petitioner had purchased the property in cash, only to mortgage it to a former roommate for the same amount a month and a half later, and either his poverty was self-inflicted for purchasing a house with no income, or he in fact had income that he was failing to disclose. Petitioner appealed to the Michigan Tax Tribunal, which, after a hearing, affirmed that petitioner was not entitled to the poverty exemption. We affirm.

Our review of Tax Tribunal decisions is very limited. *Drew v Cass County*, 299 Mich App 495, 498; 830 NW2d 832 (2013). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28. Otherwise, we are limited to reviewing for a "misapplication of the law or adoption of a wrong principle." *Wexford Med Group v City of Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006). We review questions of statutory interpretation de novo. *Id*. at 202.

As an initial matter, "tax-exemption statutes are strictly construed in favor of the taxing unit," although they remain subject to the "ordinary rules of statutory construction." *Inter-Cooperative Council v Dep't of Treasury*, 257 Mich App 219, 222-223; 668 NW2d 181 (2003). This is because, "if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant

-1-

at all[.]" *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 475; 838 NW2d 736 (2013) (citation and quotations omitted). Our goal in constructing statutory language is to discern the intent of the legislature, which, if the language used is clear and unambiguous, is presumptively plainly expressed and must be applied as written. *Alliance Obstetrics & Gynecology v Dep't of Treasury*, 285 Mich App 284, 286; 776 NW2d 160 (2009).

Petitioner argues that the principle of construing tax exemptions in favor of the taxing authority is based on a misreading of Justice Cooley's *Treatise on Taxation*. Petitioner's argument is difficult to follow, but petitioner apparently makes this argument because of a misunderstanding of what the word "public" means. Petitioner quotes, " . . . when a special privilege or exemption is claimed under a statute or act of incorporation, it is to be construed strictly against the property owner and in favor of the public." The taxing authority is, in fact, the "public." Petitioner even directly quotes Justice Cooley's statement that "when an exemption is found to exist, it shall not be enlarged by construction." This is precisely what petitioner appears, confusingly, to be arguing against. Treatises, of course, lack the force of binding law, whereas we are bound by stare decisis to follow the decisions of our Supreme Court, see *Charles A Murray Trust v Futrell*, 303 Mich App 28, 48; 840 NW2d 775 (2013), which apply this principle, see e.g., *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 753; 298 NW2d 422 (1980). We find that it is petitioner whose construction of Justice Cooley's treatise is inconsistent with the plain language therein, but we would not be at liberty to overturn a decision by our Supreme Court in any event.

Insofar as we can determine from petitioner's confusing and inconsistent arguments, he contends that respondent's guidelines violate subsections (4) and (5) of MCL 211.7u because they fail to provide guidance regarding "self imposed situation," the significance of "purchasing a home with no income," the definition of "poverty," or the significance of the applicant's credibility. Petitioner further contends (albeit inconsistently) that the tribunal improperly granted discretion to respondent where the statute allegedly grants none. MCL 211.7u provides in relevant part:

(1) The principal residence of persons who, in the judgment of the supervisor and board of review, by reason of poverty, are unable to contribute toward the public charges is eligible for exemption in whole or in part from taxation under this act. This section does not apply to the property of a corporation.

(2) To be eligible for exemption under this section, a person shall do all of the following on an annual basis:

(a) Be an owner of and occupy as a principal residence the property for which an exemption is requested.

(b) File a claim with the supervisor or board of review on a form provided by the local assessing unit, accompanied by federal and state income tax returns for all persons residing in the principal residence, including any property tax credit returns, filed in the immediately preceding year or in the current year . . .

(c) Produce a valid driver's license or other form of identification if requested by the supervisor or board of review.

(d) Produce a deed . . . of ownership of the property for which an exemption is requested if required by the supervisor or board of review.

(e) Meet the federal poverty guidelines . . . or alternative guidelines adopted by the governing body of the local assessing unit provided the alternative guidelines do not provide income eligibility requirements less than the federal guidelines.

\* \* \*

(4) The governing body of the local assessing unit shall determine and make available to the public the policy and guidelines the local assessing unit uses for the granting of exemptions under this section. The guidelines shall include but not be limited to the specific income and asset levels of the claimant and total household income and assets.

(5) The board of review shall follow the policy and guidelines of the local assessing unit in granting or denying an exemption under this section unless the board of review determines there are substantial and compelling reasons why there should be a deviation from the policy and guidelines and the substantial and compelling reasons are communicated in writing to the claimant.

Procedurally, the petitioner has the burden of showing that he is entitled to the poverty tax exemption and "must prove, among other things, that he or she meets the poverty guidelines." *Spranger v City of Warren*, 308 Mich App 477, 479; 865 NW2d 52 (2014), citing MCL 211.7u(2)(e). The petitioner's application "must be submitted on a form provided by the local assessing unit, MCL 211.7u(2)(b) and must comply with the policies and guidelines of the local assessing unit, MCL 211.7u(4)." *Spranger*, 308 Mich App at 479-480. "In deciding whether to grant the requested poverty exemption, the board of review must generally follow the policies and guidelines of the local taxing unit unless it finds that there are substantial and compelling reasons to deviate therefrom." *Id*. at 480, citing MCL 211.7u(5).

In relevant part, respondent's guidelines reiterated the substance of MCL 211.7u(1) and added that respondent "further defines a Poverty exemption as having insufficient resources beyond ones control to pay ones property taxes" and "does not include having the inability to afford ones property taxes due to a self imposed situation." The guidelines established a maximum income level of $19,500 for a single person in the household, with a maximum of $25,000 in assets "other than the homestead and standard mode of transportation." Petitioner apparently believes that the phrase "self imposed situation" provides insufficient guidance and is inconsistent with MCL 211.7u. We disagree.

The word "poverty" is not defined by statute, so it is proper to rely on a dictionary to provide its definition. *Pobursky v Gee*, 249 Mich App 44, 46; 640 NW2d 597 (2001). Thus, poverty may be defined as "the state of one who lacks a usual or socially acceptable amount of money or material possessions," Merriam-Webster's Collegiate Dictionary (11th ed), or "[t]he

condition of being indigent; the scarcity of the means of subsistence," Black's Law Dictionary (8[th] ed). Indigency in the latter dictionary refers to "lack[ing] the means of subsistence." *Id*. Therefore, MCL 211.7u(1) plainly and unambiguously requires an inability to pay one's taxes because the person lacks sufficient resources in essentially all other respects as well. We think it obvious that "poverty" does not mean lacking in any money, nor does it necessarily require a person to prioritize payment of taxes over purchasing very basic necessities for survival. However, the equally obvious corollary is that "poverty" is a meaningfully involuntary state; an *inability* logically precludes having *chosen* such a state. We appreciate that a person might have some superficial and technical choices they can make about how to order their affairs, while lacking any practical choices that would have meaningful effect. Nevertheless, in light of the statute's express grant of "judgment" to the supervisor and board of review, we find no ambiguity in distinguishing between a technical choice and a practical one.

Respondent's use of the phrase "self-imposed situation" is therefore perfectly consistent with MCL 211.7u(1). The statute requires municipalities to determine "the policy and guidelines" that its assessor's office will use for the granting of a poverty exemption, and further requires an exercise of discretion in their execution. Respondent's prohibition against "self-imposed situations" constituting "poverty" is well within the meaning of "poverty" as defined and as commonly understood. Petitioner's objections to respondent's guidelines are meritless.

Petitioner does not directly raise any argument on appeal seriously challenging the evidence against him, beyond arguing that respondent erred in administering the statute. Nonetheless, we briefly address the evidence for completeness. Petitioner does, relatedly, argue that the evidence he presented in his own favor should have warranted summary disposition in his favor.

We review the Tax Tribunal's factual findings only to determine whether "they are supported by competent, material, and substantial evidence on the whole record." *Drew*, 299 Mich App at 499 (citation and quotations omitted). "Substantial evidence" is "more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Leahy v Orion Twp*, 269 Mich App 527, 529-530; 711 NW2d 438 (2006) (citation and quotation omitted). Because the Tax Tribunal lacks a formal rule pertaining to motions for summary disposition, we refer to MCR 2.116(C). See TTR 792.102105 (indicating that in the absence of an applicable tribunal rule, the Michigan court rules or the administrative procedures act shall apply). We review motions for summary disposition de novo; under MCR 2.116(C)(10) we consider all of the evidence submitted in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record leaves open "an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation omitted).

Although petitioner's application indicates that he meets respondent's income and asset guidelines necessary to qualify for the exemption, other evidence suggests that petitioner's submissions of income and assets are not credible. Petitioner contends that credibility is an impermissible basis for a denial because it is not explicitly listed as such, but this reflects a fundamental misunderstanding of what credibility means in context. Here, it means there are such significant discrepancies between petitioner's reported income and apparent expenditures

and assets, as derived from such evidence as his cash purchase of the property, monthly payments, and business expenses, that the only rational conclusion is that petitioner's self-reported lack of income must be incorrect. Consequently, the evidence shows that petitioner is not truly as impoverished as he claims. Additionally, even if a given person genuinely cannot execute a particular responsibility, voluntarily assuming that responsibility anyway certainly constitutes a "self-imposed situation." There is no indication that petitioner's financial situation unexpectedly, abruptly, and uncontrollably changed immediately after he purchased the property, nor is there any indication that he was unaware that property taxes are a well-established phenomenon. Because substantial, competent, and material evidence supports the Tax Tribunal's finding that, however it is phrased, we defer to the Tax Tribunal's findings. *Stege v Dep't of Treasury*, 252 Mich App 183, 188; 651 NW2d 164 (2002).

Petitioner's summary disposition argument fails for the same reason. Petitioner argues that because his reported income and asset levels fall below the guideline's levels, there is no question of fact that he is entitled to the exemption. If that had been the *only* evidence introduced, petitioner's argument might have some merit. However, as discussed, there was considerable evidence strongly suggesting that petitioner's reported income was fictitious, and also as discussed, respondent's guidelines were entirely proper. Consequently, petitioner failed to establish that no question of fact existed regarding his entitlement to the tax exemption.

Finally, petitioner makes an equally meritless argument that the Tax Tribunal erred by denying his motion for discovery because, *inter alia*, he sought to determine whether MCL 211.7u had been correctly discharged and he had no "reliable explanation why [his] application was denied . . . " Because petitioner initiated his claim in the small claims division, the formal rules of discovery are inapplicable. See MCL 600.8411. In any event, respondent correctly points out that petitioner already had the information he sought: respondent had already attached all documents relevant to the denial, including the handwritten notes on petitioner's application explaining the basis for the denial. In other words, petitioner had been given an explanation; petitioner simply did not understand it or did not like it. The Tax Tribunal did not in any way abuse its discretion by declining to order respondent to provide petitioner with an additional copy of the documentation petitioner already possessed.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher

-5-